No. 78,343

MARTIN RUDDICK, *Claimant-Appellee,* v. THE BOEING COMPANY and AETNA CASUALTY & SURETY COMPANY, *Respondent and Insurance Carrier/Appellants,* and WORKERS COMPENSATION FUND, *Appellee.*

(949 P.2d 1132)

Opinion filed December 12, 1997.

*Vaughn Burkholder,* of Foulston & Siefkin, L.L.P, of Wichita, argued the cause, and *Stephen M. Kerwick,* of the same firm, was with him on the briefs for appellant.

*Michael L. Snider,* of Snider & Seiwert, L.L.C., of Wichita, argued the cause and was on the brief for appellee Martin Ruddick.

The opinion of the court was delivered by

WAHL, J.: This is a workers compensation case in which the respondent, Boeing Company (Boeing), appeals from a portion of

an order of the Workers Compensation Board (Board) finding that Boeing should have continued permanent partial disability payments pursuant to the claimant's original award until the date the administrative law judge (ALJ) entered an order of review and modification, instead of ceasing payments as of the date the claimant returned to work.

The facts are not in dispute. Claimant, Martin Ruddick, was injured during the course of his employment with Boeing, having developed carpal tunnel syndrome and epicondylitis in both arms through repeated work activities as a sheet metal assembler. He underwent surgery to relieve these conditions. On March 29, 1994, Ruddick was laid off. On July 12, 1995, Ruddick's claim was resolved through an agreed award under which Ruddick received benefits based upon a permanent partial disability for 159.74 weeks and a work disability of 38.5%, which reflected a work disability in excess of his functional impairment rating. The parties stipulated to a 14% general bodily disability, and payments were to begin as of September 5, 1994.

On March 18, 1996, Ruddick was recalled to employment at Boeing for a wage comparable to his pre-injury wage. By that time, he had received 83 weeks of permanent partial disability benefits.

On April 2, 1996, Boeing filed an application for review and modification of the existing agreed award and discontinued compensation payments to Ruddick as of April 7, 1996. Boeing's position was based upon K.S.A. 44-510e(a), which provided that an employee "shall not be entitled to receive permanent partial general disability in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage the claimant was earning at the time of the injury."

K.S.A. 44-510e(a) provides that an award of permanent partial disability benefits is to be paid at the full rate for a fraction of the statutory period comparable to the percentage of disability—in this case 14%. The amount of the ultimate award to which Ruddick was entitled for permanent partial disability had already been exhausted by the time he returned to work at Boeing, and Boeing contends it had no further liability for payments.

Boeing's application for review and modification was set for hearing before the ALJ on April 9, 1996. Ruddick opposed Boeing's application for modification of the award and contended that, according to K.S.A. 44-510e(a), the July award had to be paid for the number of full disability weeks at the full payment until fully paid or modified. On June 12, 1996, the ALJ ruled in favor of Boeing, noting that the appropriate amount of benefits for claimant's disability based upon functional impairment alone—that is, if he had remained employed throughout the period—would have been 58.1 weeks. Since Boeing had already paid 83 weeks of benefits due to the work disability resulting from Ruddick's layoff, the ALJ ruled Boeing was correct to terminate payments as of the date Ruddick returned to employment at Boeing. Ruddick appealed the ALJ's review and modification order to the Board.

The Board framed the issues as:

1. whether the ALJ properly calculated Ruddick's remaining benefits;

2. whether Ruddick was entitled to continue to receive permanent partial disability benefits through June 12, 1996, the date of the ALJ's review and modification order, rather than through March 18, 1996, the date he returned to work at Boeing; and

3. whether Ruddick was entitled to an award of attorney fees.

The Board found that the ALJ had properly calculated the disability award and had properly denied attorney fees. The Board, however, found that Boeing should have continued payment of permanent partial disability pursuant to the original award until the date the ALJ entered the order of review and modification on July 13, 1996, instead of ceasing payments on the date Ruddick returned to work. The Board based its decision upon K.A.R. 51-19-1, which provides:

"Where application for review and modification pursuant to K.S.A. 44-528 is made by a respondent from an award which is in full force and effect, compensation payments are to continue until it is finally determined that the original award is to be modified and the amounts determined. The filing of the application for review and modification does not carry with it the right to stop compensation being paid under an award."

The Board found, under a 3-2 decision, that Boeing should have continued to pay the ordered permanent partial disability compen-

sation until July 13, 1996, the effective date of the award on review and modification. Boeing appeals from that portion of the Board's order awarding Ruddick compensation for the time period between March 18, 1996, and July 13, 1996.

Review of the Board's decision by the appellate courts is in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions (Act), K.S.A. 77-601 *et seq.* See K.S.A. 44-557. Under K.S.A. 1996 Supp. 44-556(c), appellate review is explicitly limited to questions of law. See *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 277, 899 P.2d 1058 (1995). K.S.A. 77-621 states, in relevant part:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole . . .; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

The court may review an administrative agency action, *e.g.*, promulgation of a regulation, as any other civil case would be reviewed. K.S.A. 77-623. We must determine whether K.A.R. 51-19-1 improperly conflicts with K.S.A. 44-528(d), which requires statutory construction. Statutory construction is a question of law, and this court has unlimited appellate review of these issues.

Moreover, K.S.A. 44-528 specifically provides for review where there is a change in the claimant's "work disability." "Work disability is: (a) The extent to which the ability of the employee to perform work in the open labor market has been reduced, and, (b) the extent to which the ability of the worker to earn comparable wages has been reduced." *Hughes v. Inland Container Corp.*, 247 Kan. 407, 417, 799 P.2d 1011 (1990).

Ruddick raises an issue requesting affirmative relief from this court which he should have raised by appeal for judicial review. See K.S.A. 1996 Supp. 44-556(a). Ruddick disagrees with the method of calculation of benefits used by the ALJ and affirmed by

the Board. Timely filing of an appeal is jurisdictional. See K.S.A. 1996 Supp. 44-556; *Jones v. Continental Can Co.*, 260 Kan. 547, 920 P.2d 939 (1996). Since Ruddick has sought additional benefits beyond those awarded, he had to appeal or be limited only to arguments in support of the result below.

Ruddick also raises a constitutional issue which was not raised below and contends that his due process and equal protection rights were violated. Where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. *In re M.M.L.*, 258 Kan. 254, Syl. ¶ 1, 900 P.2d 813 (1995); *Murphy v. IBP, Inc.*, 240 Kan. 141, Syl. ¶ 3, 727 P.2d 468 (1986).

Turning to the issue regarding the impact of K.A.R. 51-19-1 on Ruddick's work disability compensation, we note that K.S.A. 44-528 provides:

> "(d) Any modification of an award under this section on the basis that the functional impairment or work disability of the employee has increased or diminished shall be effective as of the date that the increase or diminishment actually occurred, except that in no event shall the effective date of any such modification be more than six months prior to the date the application was made for review and modification under this section."

Boeing takes issue with the Board's ruling that K.A.R. 51-19-1 provides the controlling rule of decision. Boeing argues that the Board improperly relied on a regulation which is in direct conflict with K.S.A. 44-528(d), which provides that any modification of an award "on the basis that the functional impairment or work disability of the employee has increased or diminished . . . shall be effective as of the date that the increase or diminishment actually occurred." Boeing points out that statutorily mandating that a modification is effective on the date that the increase or decrease "actually occurred" is inconsistent with the regulation, which entitles claimants to retain an entitlement to compensation during the pendency of review and modification proceedings. Giving effect to K.A.R. 51-19-1 renders the effective date provision of the statute meaningless or ineffective, and, according to Boeing's rationale, is "an outcome to be avoided." See, *e.g.*, *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

As a general rule, administrative regulations have the force and effect of law. K.S.A. 77-425; *Jones v. The Grain Club*, 227 Kan. 148, 150, 605 P.2d 142 (1980). Administrative regulations are presumed to be valid, and one who attacks them has the burden to show their invalidity. *Capital Electric Line Builders, Inc. v. Lennen*, 232 Kan. 379, 383, 654 P.2d 464 (1982). However, rules or regulations of an administrative agency, to be valid, must be within the statutory authority conferred upon the agency. Those rules or regulations that go beyond the authority authorized, which violate the statute, or are inconsistent with the statutory powers of the agency are void. Administrative rules and regulations, to be valid, must be appropriate, reasonable, and not inconsistent with the law. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, Syl. ¶ 1, 673 P.2d 1126 (1983).

Instructive in this regard is *Hall v. State Farm Mut. Auto. Ins. Co.*, 8 Kan. App. 2d 475, 661 P.2d 402, *rev. denied* 233 Kan. 1091 (1983). In that case, Hall brought a declaratory judgment action to determine the extent of State Farm's subrogation right under K.S.A. 40-3113a. Both Hall and the Insurance Commissioner contended that K.A.R. 40-1-20, issued by an Insurance Commissioner in the 1960's, prohibited subrogation of medical benefits. The regulation provided:

"All insurance companies are prohibited from issuing contracts of insurance in Kansas containing a 'subrogation' clause applicable to coverages providing for reimbursement of medical, surgical, hospital or funeral expenses."

The regulation directly contradicted a provision of the Kansas Automobile Insurance Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.*, enacted in 1974, which required minimum medical expense coverage under no-fault automobile policies and also allowed insurers to voluntarily write larger amounts. KAIRA also allowed subrogation of no-fault payments. Hall and the Insurance Commissioner argued that the statutory authorization for subrogation in KAIRA applied only to those minimum amounts of coverage required by KAIRA and that the regulation barred subrogation as to any higher, optional coverage. The Court of Appeals disagreed, stating:

"Defendant argues that the regulation is void. This court need not address this argument. The sole issue raised is whether under KAIRA the defendant has a right of subrogation to medical benefits in excess of $2,000. To the extent that KAIRA allows subrogation, the regulation is invalid. A regulation cannot contravene a controlling statute. *Cray v. Kennedy*, 230 Kan. 663, 676, 640 P.2d 1219 (1982)." 8 Kan. App. 2d at 481.

Also relevant is *National Council on Compensation Ins. v. Todd*, 258 Kan. 535, 544, 905 P.2d 114 (1995). In that case, the court held invalid a regulation promulgated by the Kansas Insurance Department on the grounds that it exceeded the statutory authority of and conflicted with K.S.A. 40-1117, which the Department relied on in promulgating the regulation.

There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *In re Adoption of Baby Boy L.*, 231 Kan. 199, Syl. ¶ 7, 643 P.2d 168 (1982); *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, 221, 696 P.2d 409 (1985). K.S.A. 44-528(d) clearly provides that the modification of Ruddick's award made on the basis that his work disability increased or diminished became effective as of the date "that the increase or diminishment actually occurred," or, in this case, March 18, 1996, the date that Ruddick returned to work and earned a comparable wage at Boeing. It is significant that the Workers Compensation Act provides no means for reimbursement to respondents by claimants for overpayments received by theft. On the other hand, the Act does provide for review and civil penalties against employers in cases where the employer improperly fails to pay compensation, a procedure which Ruddick used in this case.

Since a conflict exists between the provisions of the administrative regulation and the statute, the provisions of the statute prevail, and insofar as it conflicts with the statutory provisions of K.S.A. 44-528(d), K.A.R. 51-19-1 is void.

We find Ruddick was not entitled to compensation for the period of March 18, 1996, to July 12, 1996, the date of the ALJ's order of modification.

Reversed and remanded for orders consistent herewith.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.