NOT DESIGNATED FOR PUBLICATION

No. 111,202

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Appeal of
*O. Gene Bicknell & Rita J. Bicknell*
from an Order of the Division of Taxation on Assessment of Income Tax.

MEMORANDUM OPINION

Appeal from Court of Tax Appeals. Opinion filed September 25, 2015. COTA decision vacated and remanded with directions.

*Russell S. Jones, Jr., Jay E. Heidrick*, and *Miriam E.C. Bailey*, of Polsinelli PC, of Kansas City, Missouri, for appellants.

*J. Brian Cox*, senior litigation attorney, and *James A. Bartle*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before GREEN, P.J., STANDRIDGE and POWELL, JJ.

*Per Curiam*: This case concerns the disputed tax-residency status of O. Gene Bicknell (Gene) for tax years 2005 and 2006. Gene and his wife, Rita J. Bickenell, appeal from the Court of Tax Appeals' (COTA) determination that Gene was a Kansas resident in 2005 and 2006. On appeal, the Bicknells argue that COTA erroneously ignored or disregarded almost all regulations adopted by the Kansas Department of Revenue (KDR) regarding tax-residency status. The Bicknells also challenge the constitutionality of the KDR's 2006 amendment found at K.A.R. 92-12-4a, arguing that it lacks any ascertainable standard, is unconstitutionally vague, and violates due process.

1

We determine that COTA has ignored K.A.R. 92-12-4 (2006) and almost all of K.A.R. 92-12-4a; nowhere in its decision is the regulation K.A.R. 92-12-4 (2006) even cited, let alone considered. It is well established that COTA must furnish adequate support or reasons for its decision. See K.S.A. 2014 Supp. 77-621(c)(7). COTA, however, does not give adequate support or reasons for its failure to apply K.A.R. 92-12-4 (2006) and K.A.R. 92-12-4a. Further, by ignoring these regulations, with its criteria for determining tax-residency status, it prevents this court from determining under K.A.R. 92-12-4 (2006) and K.A.R. 92-12-14a whether substantial evidence supported COTA's decision that Gene was a resident of Kansas rather than Florida for the tax years 2005 and 2006. As a result, this case must be remanded for a determination by COTA on the issue of Gene's tax-residency status for the years 2005 and 2006 under K.A.R. 92-12-4 (2006), K.A.R. 92-12-4a, controlling statutory law, and case law. Accordingly, we vacate COTA's decision and remand this matter to COTA for readjudication consistent with this opinion.

These parties were previously before our court on another issue involving a petition for declaratory judgment challenging the constitutionality of K.A.R. 92-12-4a. Our court explained the factual and procedural background as follows:

"On October 1, 2010, the KDR issued a final written determination assessing additional income tax, penalties, and interest against the Bicknells for tax years 2005 and 2006. The total amount of the assessment was $42,544,676. The sole issue in controversy involved the residency status ('domicile') of Gene for the tax years in question. The Bicknells filed an appeal from the KDR assessment with the Court of Tax Appeals (COTA). The sole issue in the COTA appeal is whether Gene was a resident of Kansas or Florida; it is undisputed that Rita was domiciled in Kansas until at least 2008.

"While the COTA appeal was pending, the Bicknells filed a parallel petition in the district court seeking a declaratory judgment that K.A.R. 92-12-4a—a regulation adopted by KDR for use in determining a taxpayer's 'domicile'—is unconstitutional both on its face and as applied by KDR to find Gene to be a Kansas resident for income tax purposes. In pertinent summary, the Bicknells alleged that the regulation, as amended in

2

2006, is unconstitutionally vague and overbroad because it neither gives fair warning to those potentially subject to it, nor adequately guards against arbitrary, discriminatory, and capricious enforcement. (The Bicknells alleged several other grounds in support of their claims, which are not essential to our resolution of the primary issue of jurisdiction.)

. . . .

"On March 8, 2013 (which incidentally was the same day on which COTA began a 6-day trial of the Bicknells' tax appeal), the district court entered its memorandum decision and order granting KDR's motion to dismiss. The court ruled that it lacked subject matter jurisdiction over the constitutional challenge to matters already pending before COTA:

> "'First, the KJRA states plainly the scope of judicial review includes whether an agency action, statute or rule and regulation is unconstitutional. K.S.A. 77-621(c)(1). Second, relevant case law supports the preclusion of declaratory relief when constitutional claims are secondary or when an agency action is still pending. Third, the recent Order on Motions in the related COTA proceeding does not conflict with this Court's ruling.'" *Bicknell v. Jordan*, No. 109,720, 2014 WL 1302634, *1-2 (unpublished opinion).

In the preceding case, our court was tasked solely with the question of whether the trial court had jurisdiction to consider the Bicknells' legal challenge to the KDR's application of the alleged unconstitutional regulations while their appeal was still pending before COTA. Ultimately, our court held that the trial court properly determined that it lacked subject matter jurisdiction over the Bicknells' declaratory judgment action. 2014 WL 1302634.

In this current case, the sole issue before COTA was whether Gene was a resident of Kansas or Florida for the tax years 2005 and 2006. Under a common-law approach, COTA determined that Gene was a Kansas resident for those tax years. As a result, COTA assessed income tax, penalties, and interest against the Bicknells for the total amount of $42,544,676. This appeal followed.

3

*Did COTA Err in Ignoring and Failing to Apply KDR's Published Regulations When Determining Gene's Domicile?*

The ultimate question before us is whether COTA furnished adequate support or reasons for its failure to apply K.A.R. 92-12-4 (2006) and K.A.R. 92-12-4a in determining Gene's tax-residency status for the tax years 2005 and 2006. In making its decision, COTA expressly admitted that it was "ignoring all presumptions contained in the current regulation." COTA's reason for ignoring the regulation was that "[t]he current regulation restates and incorporates existing common-law principles and evidentiary standards." Thus, COTA chose to "rely instead on Kansas statutory law and case law, including the recapitulation of the common law contained in the Restatement (Second) of Conflict of Laws as approved in [*In re Estate of Phillips*, 4 Kan. App. 2d 256, 604 P.2d 747, *rev. denied* 227 Kan. 927 (1980)]." COTA further explained that "[t]he only provision of the current regulation that we expressly implement and apply in this decision is K.A.R. 92-12-4a(b)(8)," which excludes the consideration of the location of a person's charitable contributions or charitable service.

*Standard of Review*

Under K.S.A. 2014 Supp. 77-621(c), a court reviewing an administrative action shall grant relief only if it determines that the agency violated one or more of the provisions listed in K.S.A. 2014 Supp. 77-621(c)(1)-(8).

> "'On appeal, we exercise the same statutorily limited review of the agency's action as does the district court, i.e., '"as though the appeal had been made directly to this court.' [Citation omitted.] The party asserting the agency's action is invalid bears the burden of proving the invalidity.' *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 611, 132 P.3d 870 (2006) (quoting *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 245, 75 P.3d 226 [2003]; [citation omitted].
> . . . .

4

"With regard to questions of law, traditionally Kansas courts have given deference to an agency's interpretation of a statute if there was a rational basis for it. *Fieser v. Kansas Bd. of Healing Arts*, 281 Kan. 268, 270, 130 P.3d 555 (2006). However, in *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 457, 228 P.2d 403 (2010), our Supreme Court declared that an agency's statutory interpretation "is not afforded any significant deference on judicial review." Therefore, "'[w]hether an agency has exceeded its statutory authority requires interpretation of the statutes establishing the agency.'" *Ryser v. State*, 295 Kan. 452, 464, 284 P.3d 337 (2012).

. . . .

"As to an agency's factual findings, K.S.A. 2012 Supp. 77-621(c)(7) has always provided that appellate courts review an agency's factual findings to ensure substantial evidence supports them 'in light of the record as a whole.' . . .

. . . .

"As amended, K.S.A. 2013 Supp. 77-621(d) now defines 'in light of the record as a whole' to include evidence that both supports and detracts from an agency's finding. Thus, appellate courts must determine whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. Substantial evidence is such evidence as a reasonable person might accept as being sufficient to support a conclusion. *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 362-63, 212 P.3d 239 (2009)." *Clawson v. Kansas Dept. of Agriculture*, 49 Kan. App. 2d 789, 795-97, 315 P.3d 896 (2013).

Although the facts of this case are important, it is not the facts which are determinative of this issue. Rather, it is whether COTA provided adequate reasons for its failure to apply K.A.R. 92-12-4 (2006) and 92-12-4a, which listed objective criteria to be used in determining a taxpayer's tax-residency status. The controlling statute here is K.S.A. 79-32,109(b), which states:

"'Resident individual' means a natural person who is domiciled in this state. A natural person who spends in the aggregate more than six months of the taxable year within this state shall be presumed to be a resident for purposes of this act in absence of proof to the contrary. A nonresident individual means an individual other than a resident individual."

5

Under K.S.A. 79-3236, the Secretary of the Department of Revenue (Secretary) promulgated the following regulations regarding tax-residency status. Before March 24, 2006, K.A.R. 92-12-4 stated the following:

"(a) 'Domicile' shall mean that place where a person resides, where the person has an intention to remain, and to which the person intends to return following any absence.

"(b) To constitute a change in domicile, there shall be intent to change, actual removal, and the acquisition of a new domicile. The domicile shall not be changed by removal for a definite period or for particular purposes nor by abandonment of the old domicile until the acquisition of a new one is effected.

"(c) A voting residence shall constitute evidence of domicile. The state where an individual's driver's license is issued and the state where an individual's vehicle is registered shall constitute evidence of domicile."

On March 24, 2006, K.A.R. 92-12-4 was revoked and replaced by K.A.R. 92-12-4a. This new regulation was considerably more detailed and provided the following:

"(a) As used in this regulation, the term 'Kansas resident' shall have the same meaning as that assigned to the term 'resident individual' in K.S.A. 79-32,109, and amendments thereto.

(b) This subsection shall apply in determining whether a natural person is a 'resident individual,' as the term is defined in K.S.A. 79-32,109 and amendments thereto, on the basis that the person's domicile is within Kansas.

(1) Subject to the further conditions and requirements in this subsection, 'domicile' shall mean that place in which a person's habitation is fixed, without any present intention of removal, and to which, whenever absent, that person intends to return.

(2) Each person shall have only one domicile at any particular time. Once shown to exist, a domicile shall be presumed to continue until the contrary is shown. The absence of any intention to abandon an existing domicile shall be considered to be equivalent to the intention to retain the domicile.

6

(A) A person who leaves that person's domicile to go into another jurisdiction for temporary purposes shall not be considered to have lost the domicile. The mere intention to acquire a new domicile, without the fact of physical removal, shall not change a person's domicile, and the fact of physical removal from a person's domicile, without the intention to remain absent, shall not change that person's domicile.

(B) If a person whose domicile is in Kansas is absent from Kansas for more than six months of the tax year, that person shall not be presumed to have lost that domicile. If a person leaves this state to accept a job assignment in another jurisdiction, that person shall not be presumed to have lost that person's domicile in this state.

(C) A person who is temporarily employed within this state shall not be deemed to have acquired a domicile in this state if, during that period, the person maintains that person's domicile outside of the state of Kansas.

(3) A person shall be considered to have established that person's domicile in Kansas on the date that the person arrives in the state for other than temporary or transitory purposes. A person shall be considered to have abandoned that person's domicile on the date that the person leaves the state without any intention to return to Kansas.

(4) Any citizen of a foreign country may acquire a domicile for Kansas tax purposes without surrendering that person's rights as a citizen of that country.

(5) Except for a person who is covered by the provisions of the soldiers' and sailors' civil relief act of 1940, 50 U.S.C. app. § 574, as amended by the servicemembers civil relief act, public law 108-189, there shall be a presumption that the place where a person's family is domiciled is that person's domicile. The domicile of a person who is married shall be the same as the person's spouse unless there is affirmative evidence to the contrary, the husband and wife are legally separated, or the marriage has been dissolved. When a person has made a home at any place with the intention of remaining there indefinitely and the person neither lives at the home in which the person's family lives nor intends to do so, then that person shall be deemed to have established a domicile separate from that person's family.

(6) If a minor child is not emancipated, the domicile of the child's parents shall be the domicile of the child. The domicile of the parent who has legal custody of the child shall be the domicile of the child.

(7) The following factors may be considered in determining whether or not a person's domicile is in this state for the tax years in question, although none of these factors shall, by itself, be a determinant of a person's domicile:

(A) The percentage of time that the person is physically present within the state of Kansas and the percentage of time that the person is physically present in each jurisdiction other than the state of Kansas;

(B) the location of the person's domicile for prior years;

(C) the location at which the person votes or is registered to vote, except that casting an illegal vote shall not establish a domicile for income tax purposes;

(D) the person's status as a student;

(E) the location of services performed by the person in the course of employment;

(F) the classification of the person's employment as temporary or permanent;

(G) the change in the person's living quarters;

(H) the person's ownership of other real property;

(I) the jurisdiction in which the person has been issued a valid driver's license;

(J) the jurisdiction from which any motor vehicle registration was issued to the person and the actual physical location of the person's vehicle or vehicles;

(K) the purchase of any resident fishing or hunting licenses by the person;

(L) the filing by the person of a Kansas tax return, report, or application as a Kansas resident or a nonresident individual;

(M) the fulfillment or failure to fulfill by the person of the tax obligations required of a Kansas resident;

(N) the address where personal mail is received by that person and not subsequently forwarded;

(O) the location of the jurisdiction from which any unemployment compensation benefits are received by the person;

(P) the location of any school that the person or the person's spouse attends and whether resident or nonresident tuition was charged, as well as the location of the school attended by any of the person's children who are in grades K-12;

(Q) the representations made to any insurance company concerning the person's residence and on which any insurance policies are issued;

(R) the location where the person, the person's spouse, or the person's minor children regularly participate in sporting events, group activities, or public performances; and

(S) any other fact relevant to the determination of that person's domicile.

(8) The following factors shall not be considered in determining whether or not a person is domiciled in Kansas:

(A) The location of any organization to which the person makes charitable contributions; and

(B) the location of any charitable organization for which the person serves as a board member, committee member, or other volunteer."

Properly promulgated administrative regulations have the force and effect of law. K.S.A. 77-425. Administrative regulations are presumed to be valid, and one who challenges them has the burden of showing their invalidity. *Mitchell v. Petsmart, Inc.*, 291 Kan. 153, 168, 239 P.3d 51 (2010); *Hall v. Knoll Building Maintenance, Inc.*, 48 Kan. App. 2d 145, 150, 285 P.3d 383 (2012). Additionally, as a general rule, agencies may not disregard their own rules and regulations. *Schmidt v. Kansas Bd. of Technical Professions*, 271 Kan. 206, 221, 21 P.3d 542 (2001).

The Bicknells maintain that they were deprived of due process when COTA decided to rely on a common-law approach as opposed to applying the KDR published regulations. The Bicknells argue that the regulations were the only notice that taxpayers had of the factors that would be used to determine domicile; thus, COTA deprived them of due process by ignoring the regulations completely.

In response, the KDR contends that the Bicknells incorrectly argue that the regulations are separate and different than the common law. The KDR agrees with COTA that the regulations are merely a "detailed reflection of existing statutory and case law;" therefore, the KDR argues that COTA essentially applied the regulations. The KDR

9

further contends that COTA's decision should be upheld because the Bicknells have failed to show that COTA's residency analysis was incorrect, legally or factually.

The Bicknells rely on two points in making their argument. First, the Bicknells argue that K.A.R. 92-12-4 (2006) was controlling for Gene's 2005 residency and that COTA erred in its decision when it failed to apply that regulation in analyzing Gene's 2005 residency. Second, the KDR applied K.A.R. 92-12-4a in determining Gene's tax-residency status for the years 2005 and 2006, although that regulation did not exist until March 24, 2006. The KDR acknowledged that K.A.R. 92-12-4a did not take effect until March 24, 2006, but determined that it would apply the regulation nonetheless "[b]ecause over 99% of the assessment [for the 2005-2006 tax years was] attributable to calendar year 2006." The Bicknells point out that COTA ignored and failed to apply all of K.A.R. 92-12-4a, except for one subsection, in determining Gene's 2005 and 2006 tax-residency status. The Bicknells contend that COTA erred when it ignored and failed to consider K.A.R. 92-12-4a in its decision.

Further, the Bicknells argue that the beforementioned regulations established objective criteria for making a tax-residency determination. Indeed, the Secretary has promulgated K.A.R. 92-12-4 (2006) and K.A.R. 92-12-4a as a means of evaluating taxpayers' tax-residency claims. Moreover, once a regulation has been adopted, neither the Secretary nor his or her subordinates are free to ignore the regulation. Both COTA and the KDR are administrative bodies, and each has a role in administering the Act. Although COTA and the KDR may disagree on the interpretation and the application of various statutes and regulations in a given case, COTA is not free to ignore regulations which the KDR has adopted. See, *e.g., Vandever v. Kansas Dept. of Revenue*, 243 Kan. 693, 697-98, 763 P.2d 317 (1988) (holding that trial court erred in ignoring regulation "by resorting to the general policy" set forth in the authorizing statute); see also *In re Tax Appeal of Harbour Brothers Constr. Co.*, 256 Kan. 216, 220-23, 883 P.2d 1194 (1994) (reversing when BOTA did not cite applicable regulations in its findings and conclusions,

10

and BOTA's holding was contrary to the statute under which the regulations were promulgated).

It is well established that COTA must give adequate reasons for its decisions. In its order, COTA focused exclusively on Kansas statutory law and caselaw, including the Restatement (Second) of Conflict of Laws, concerning Gene's tax-residency status. COTA expressly ignored or disregarded the applicable KDR regulations in explaining its findings and conclusions. COTA explained its reason for its failure to consider or to apply all of K.A.R. 92-12-4a, except for one subsection, in determining Gene's 2005 and 2006 tax-residency status:

"KDR's two regulations set out, with differing degrees of specificity, administrative guidance regarding domicile determinations in Kansas income tax controversies. These regulations, however, cannot abridge, enlarge, or modify the substantive law of domicile as embodied in the statutes and case authorities of this state. [Citation omitted.] Administrative regulations must be read in harmony with statutes relating to the same subject matter to the end that both may be given effect if possible. [Citations omitted.]

"Under Kansas statutory and case law, the factfinder must look at all relevant facts and circumstances to determine residency. [Citations omitted.] *In this sense, then, K.A.R. 92-12-4a(b)(7) is merely a detailed reflection of existing statutory and case law.* See, *e.g.,* K.A.R. 92-12-4a(b)(7)(S) (any fact relevant to domicile may be considered). Therefore, we place no particular reliance for our decision herein on the former regulation or (except as expressly noted immediately hereafter) on the current regulation. *We rely instead on Kansas statutory law and case law, including the recapitulation of the common law contained in the Restatement (Second) of Conflict of Laws . . . .* The only provision of the current regulation that we expressly implement and apply in this decision is K.A.R. 92-12-4a(b)(8). It excludes from consideration 'the location of any organization to which the person makes charitable contributions [or] the location of any charitable organization for which the person serves as a board member, committee member, or other volunteer.' [Citation omitted.] Based on that provision, we do not consider, and have not considered, in our determination any evidence relating to the location of Taxpayers'

11

charitable contributions or charitable service (as a board member, committee member, or other volunteer." (Emphasis added.)

Thus, COTA has expressly ignored and failed to consider K.A.R. 92-12-4 (2006) and K.A.R. 92-12-4a; nowhere, except K.A.R. 92-12-4a(b)(8), has COTA applied these regulations in its decision. COTA's reasoning for ignoring and failing to apply these regulations is contrary to legislative purpose. K.A.R. 92-12-4 (2006) and K.A.R. 92-12-4a established objective criteria by which to evaluate claims involving taxpayers' tax-residency status. Gene has presented evidence based on these regulations. COTA, however, ignored these regulations and essentially reasoned that the regulations are meaningless because they are simply a reflection of existing statutory and caselaw.

Yet, as stated earlier, the KDR is ordered to adopt rules and regulations for the administration of the Kansas Income Tax Act. See K.S.A. 79-3236. Moreover, because the regulations have the force and effect of law it is disingenuous to say that the regulations are meaningless and should be completely ignored. It is also important to note that K.A.R. 92-12-4a(b) plainly states that "[t]his subsection *shall* apply in determining whether a natural person is a 'resident individual' . . . on the basis that the person's domicile is within Kansas." (Emphasis added.) Obviously, in a situation when the rights of individuals are affected, a duty is imposed on the agency to apply all applicable regulations to this situation.

To support their argument that COTA erred in disregarding the KDR regulations, the Bicknells rely on *Tew v. Topeka Police & Fire Civ. Serv. Comm'n*, 237 Kan. 96, 697 P.2d 1279 (1985). In the application of administrative rules and regulations, the *Tew* court explained that when an agency fails to follow the rules which it has promulgated, its order is unlawful:

12

"The rules and regulations adopted by an administrative board to carry out the policy declared by the legislature in the statutes have the force and effect of laws. [Citation omitted.] Agency regulations are issued for the benefit of both the agency *and the public*, and an agency must be held to the terms of its regulations. [Citation omitted.] As a general rule an administrative agency may not violate or ignore its own rules, and where it fails to follow the rules which it has promulgated its orders are unlawful. [Citation omitted.]" 237 Kan. at 100.

Thus, the Bicknells contend that COTA was not free to ignore the previously cited regulations which the KDR adopted.

In response, the KDR agues that the Bicknells' reliance on *Tew* is misplaced because it "involve[s] different questions under different facts and different regulations." While the KDR's statement is correct, this argument is flawed. It is extremely rare to find another case that deals with the same questions, with the same facts, and with the same regulations. Moreover, the facts and regulations at issue in *Tew* are not what the Bicknells rely on. The Bicknells, however, rely on *Tew* to show that agencies cannot ignore their regulations and to show that the regulations are issued for the benefit of the agency and *the public*. Indeed, regulations interpret applicable statutes to aid the agency and the general public's understanding of the statutes. See K.S.A. 77-425; *Bruns v. Kansas State Bd. of Technical Professions*, 255 Kan. 728, Syl. ¶¶ 1, 2, 877 P.2d 391 (1994). The regulations also help provide consistency in how the statutes should be applied. K.S.A. 79-3236 explains that the Secretary "shall adopt rules and regulations not inconsistent with the provisions of this act, as necessary."

Also, in *Schmidt*, our Supreme Court again held that "[a]n agency may not disregard its own rules and regulations, and where it fails to follow the rules which it has promulgated, its orders are unlawful." 271 Kan. at 221 (citing *Gilmore v. McKune*, 23 Kan. App. 2d 1029, Syl. ¶ 4, 940 P.2d 78 [1997]).

13

Finally, under their due process argument, the Bicknells contend that they were sandbagged by the KDR applying K.A.R. 92-12-4a in its tax assessment determination and by COTA brushing aside this regulation on appeal without any prior notice to the Bicknells or to the general public. The procedural history of this case lends support to the Bicknells' contention that they were unaware that COTA would not apply K.A.R. 92-12-4a in determining Gene's tax-residency status. Approximately 1 week before the 6-day trial started on March 8, 2013, COTA issued to the parties its Order on Motions. Mindful of the rules of statutory construction, COTA stated the following:

> "The Court's charge in this case is to consider all historical facts relevant to Taxpayer's domicilary intent during the period in question, applying all pertinent statute laws as written (presuming their constitutionality) and all pertinent administrative rules and regulations in a manner that is consistent with their authorizing acts (which also requires a construction that comports with constitutional principles)."

There is nothing in this charge that COTA would not be applying "all pertinent regulations" in this matter. As a result, the record does not show that COTA gave advance notice to the Bicknells that it would not be applying K.A.R. 92-12-4a in determining Gene's tax-residency status.

The KJRA instructs when a court shall grant relief from an agency action. Specifically, K.S.A. (2014 Supp.) 77-621(c) provides as follows:

> "(c) The court shall grant relief only if it determines any one or more of the following:
>
> (1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;
>
> (2) the agency has acted beyond the jurisdiction conferred by any provision of law;
>
> (3) the agency has not decided an issue requiring resolution;
>
> (4) the agency has erroneously interpreted or applied the law;

14

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

The Bicknells' arguments fit best under K.S.A. 2014 Supp. 77-621(c)(4) or (c)(5). COTA admittedly chose not to apply the KDR's regulations. This failure to apply the applicable regulations is a prime example of an erroneous application of the law (K.S.A. (2014 Supp.) 77-621[c][4]) and a clear and express failure to follow prescribed procedure (K.S.A. 2014 Supp. 77-621[c][5]). K.S.A. 2014 Supp. 77-621(c) instructs that a court *shall* grant relief when it finds one or more of the enumerated violations. Here, there are two violations present that warrant relief from the agency action.

Because COTA ignored and failed to apply the KDR's regulations in determining the issue of Gene's domicile, we vacate COTA's decision and remand this case to COTA for readjudication consistent with this opinion. On remand, COTA should consider K.A.R. 92-12-4 and K.A.R. 92-12-4a along with controlling statutory law and caselaw in determining Gene's tax-residency status for the years 2005 and 2006.

We decline to address the Bicknells' constitutional challenge at this time because we are remanding this case for further findings in accordance with the applicable regulations. Additionally, it is unnecessary to address the constitutional challenge because COTA did not apply K.A.R. 92-12-4a to the Bicknells' case except for one small subset of the regulation, which it applied in the Bicknells' favor.

15

COTA decision vacated and remanded to COTA for readjudication of Gene's domicile using the KDR regulations.

* * *

POWELL, J., dissenting:  I dissent from the majority's determination that COTA's method of determination warrants a remand. The majority remanded this case because COTA erroneously applied the law as described in K.S.A. 2014 Supp. 77-621(c)(4) and expressly failed to follow prescribed procedure as described in K.S.A. 2014 Supp. 77-621(c)(5). I disagree because (1) the KDR's regulations are congruent with the Kansas statute and caselaw applied by COTA; and (2) while COTA did not follow the KDR's express method for determining the citizenship of a taxpayer, its mode of analysis does not itself require a remand because COTA and the KDR are two separate agencies, meaning the regulations of one are not binding on the other. Therefore, I would instead affirm.

COTA correctly applied Kansas law—if not in form, then in substance—thus precluding a remand pursuant to K.S.A. 2014 Supp. 77-621(c)(4). K.A.R. 92-12-4a(b)(7) enumerates a number of factors the KDR *may* use in determining a person's domicile. However, as COTA correctly pointed out in its written decision, the factfinder must look at *all relevant facts and circumstances* to determine a person's domicile. See *Gleason v. Gleason*, 159 Kan. 448, 450-51, 155 P.2d 465 (1945); *In re Estate of Phillips*, 4 Kan. App. 2d 256, 265, 604 P.2d 747, *rev. denied* 227 Kan. 927 (1980). As the KDR's regulations cannot abridge, enlarge, or modify the applicable substantive law, *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. 398, 402, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973), its regulations can do no more than clarify COTA's domicile analysis without altering it. Thus, COTA's analysis of Kansas statutes and caselaw in determining Gene Bicknell's residency—an exercise that required the analysis of all relevant factors, including those listed in the KDR's regulations—cannot be said to constitute an erroneous application of the law.

16

Additionally, the majority's analysis incorrectly construes the KDR's regulations as binding on COTA through its decision that COTA expressly failed to follow prescribed procedure. The majority cites caselaw that an agency must follow its own rules which it has promulgated. I do not disagree with this premise, but I do disagree with its applicability to this case because the KDR and COTA are two separate agencies. COTA is an independent and neutral decision-making body that is not affiliated with the KDR. Additionally, COTA has jurisdiction to decide tax matters stemming from origins beyond the KDR, meaning it is not an agency created for the sole purpose of reviewing decisions of the KDR. It is therefore inaccurate to suggest the KDR's prescribed procedure for determining residency must dictate COTA's method of doing so, especially given the breadth of Kansas caselaw that would be invalidated as a result. Simply put, the KDR has prescribed its method for making its initial decision as to a person's domicile, but when the matter comes before COTA, COTA's analysis should, as already stated, include all relevant factors and not only those specifically stated in K.A.R. 92-12-4a.

For these reasons I would affirm COTA's decision.