(233 P.3d 299)
No. 102,619

JOHN KOTNOUR, *Appellee*, v. CITY OF OVERLAND PARK, *Appellant*.

Opinion filed May 28, 2010.

*Kip A. Kubin*, of Bottaro, Morefield, Kubin & Yocum, L.C., of Kansas City, Missouri, for appellant.

*James E. Martin*, of James E. Martin, Chartered, of Overland Park, for appellee.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

GREEN, J.: This is an appeal by the employer from an award entered in favor of the claimant-employee. The Kansas Workers Compensation Board (Board) determined that the employee, a police officer, who suffered a twinge in his right knee during his employment while pursuing a suspect and who did not know he had suffered an injury which could lead to a compensable disability until nearly 2½ months later when he visited his family physician for some medical issues unrelated to his right knee and who failed to report the right knee twinge to his employer within the requisite 10-day statutory notice period was not precluded from recovering benefits, where the employee furnished notice to the employer within 75 days after the date of the injury and there was no reason why the employee should have known or suspected that he had suffered an injury that could lead to a compensable disability. We agree. Accordingly, we affirm.

John Kotnour is an 18-year veteran of the City of Overland Park (City) police force. On September 21, 2007, he jumped off a 4-5 foot retaining wall while chasing a suspected car thief. Kotnour was on duty at the time.

A few days after jumping off the wall, Kotnour noticed a "twinge" in his right knee. Kotnour did not really think of the jump as an accident, nor did he think of the twinge as an injury. He stated he was not debilitated by the pain and thought it would go away eventually.

Kotnour testified that the pain continued, but he was able to stay on the job. His pain level varied depending on what he was doing. On December 3, 2007, Kotnour went to see his doctor—not because of the knee pain, but because of unrelated plantar fasciitis and seasonal allergies. During his appointment, Kotnour mentioned his knee pain to his doctor and how he thought he had injured his knee. His doctor told him to report the injury to his employer.

The next day, Kotnour told his supervisor about the incident and his knee pain—some 74 days after jumping off the retaining wall.

About a month after Kotnour's report of his knee injury, the City told Kotnour that he had not given timely notice of the injury and would not receive covered medical treatment from the City. Kotnour testified that he did not know he had to report his injury in a timely manner because the City did not notify him that he had to do so or have any posters in the office instructing him to report an injury. Nevertheless, Kotnour admitted that he had read the City's employee handbook, which included a notice that injuries should be reported immediately, and that he had previously been injured and reported that injury immediately.

In February 2008, Kotnour was examined by a second doctor. That doctor diagnosed Kotnour with an 8 percent impairment in his right lower extremity because of the September 21, 2007, jump off the retaining wall. The doctor recommended that Kotnour do spinning exercises on a stationary bike to recover from his injury. Kotnour was not prescribed any medication for his knee, but he did take "[a]spirin and things" for the pain. He incurred $465 in unauthorized medical expenses.

Kotnour filed for workers compensation benefits for his knee injury. An administrative law judge (ALJ) denied him compensation, finding that Kotnour did not have just cause for the delay in notifying the City of his injury. Kotnour requested review of the ALJ's decision. The Board reversed the ALJ's decision. The Board determined that Kotnour had just cause for his delay because he thought the injury would eventually heal itself. The Board granted Kotnour $7,140 for 14 weeks of permanent partial disability benefits and payment for his medical expenses.

*Did the Board Err in Finding Kotnour Gave Timely Notice of His Injury?*

The City argues that Kotnour's claim should be denied because he did not give timely notice of his injury. The statute relied on by the City is K.S.A. 44-520. It provides that an employee has 10 days to report his or her accident to the employer. That notice deadline, however, can be extended to 75 days after the accident if the claimant has just cause for the delay. K.S.A. 44-520.

## STANDARD OF REVIEW

*Statutory Interpretation*

Under K.S.A. 2009 Supp. 44-556(a), the Board's decisions are reviewed under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, which applies generally to appeals from administrative agencies. *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 361-62, 212 P.3d 239 (2009). To the extent that the City's argument relates to the Board's interpretation and application of K.S.A. 44-520, this court shall grant relief only if it determines that "the agency has erroneously interpreted or applied the law." See K.S.A. 2009 Supp. 77-621(c)(4).

The interpretation of statutory provisions under the Workers Compensation Act, K.S.A. 44-501 *et seq.*, is a question of law. For many years, our Supreme Court has said that the Board's interpretation of a workers compensation statute, although not binding on the courts, was " 'entitled to judicial deference if there is a rational basis for the Board's interpretation.' " *Barbury v. Duckwall Alco Stores*, 42 Kan. App. 2d 693, 695, 215 P.3d 643 (2009) (quoting *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 521, 154 P.3d 494 [2007]). Recently, however, our Supreme Court has stated that "[n]o significant deference is due the ALJ's or the Board's interpretation or construction of a statute. [Citations omitted.]" *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009).

*Questions of Fact*

Under K.S.A. 2009 Supp. 77-621(c)(7) of the KJRA, an appellate court reviews questions of fact, in light of the record as a whole, to determine whether an agency's findings are supported to the appropriate standard of proof by substantial evidence. An appellate court shall grant relief if it determines that "the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 2009 Supp. 77-621(c)(7).

K.S.A. 2009 Supp. 77-621(d) further defines an appellate court's task in reviewing questions of fact, "in light of the record as a whole," as follows:

" '[I]n light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, complied pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

Thus, K.S.A. 2009 Supp. 77-621(d) defines "in light of the record as a whole" to include the evidence both supporting and detracting from an agency's finding. Moreover, under K.S.A. 2009 Supp. 77-621(d), this court must consider the credibility determination that the hearing officer made "who personally observed the demeanor of the witness." If the agency head, here the Board, does not agree with those credibility determinations, the agency should give its reasons for disagreeing. This court must consider the agency's explanation as to why the relevant evidence in the record supports its material factual findings. For this court to fairly consider an agency's position should it disagree with a hearing officer's credibility determination, an explanation of the agency's differing opinion is generally needed. Although the statute does not define the term "substantial evidence," case law has long stated that it is such evidence as a reasonable person might accept as being sufficient to support a conclusion. *Herrera-Gallegos*, 42 Kan. App. 2d at 363.

Further explaining how the "in light of the record as a whole" standard is to be applied, Judge Steve Leben in *Herrera-Gallegos* states as follows:

"The amended statute [K.S.A. 2009 Supp. 77-621] finally reminds us that we do not reweigh the evidence or engage in de novo review, in which we would give no deference to the administrative agency's factual findings. Indeed, the administrative process is set up to allow an agency and its officials to gain expertise in a particular field, thus allowing the application of that expertise in the fact-finding process. But we must now consider all of the evidenceincluding evidence that detracts from an agency's factual findingswhen we assess whether the evidence is substantial enough to support those findings. Thus, the appellate court now must determine whether the evidence supporting the agency's decision has been so

undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." 42 Kan. App. 2d at 363.

With these standards firmly in mind, we turn now to addressing the merits of the City's argument.

*Interpretation of K.S.A. 44-520*

"Whether a claimant has provided timely notice of an accident to an employer under K.S.A. 44-520 is a question of fact" to be determined by the Board. *Myers v. Lincoln Center Ob/Gyn*, 39 Kan. App. 2d 372, 375, 180 P.3d 584, *rev. denied* 286 Kan. 1179 (2008). The Board's determination of a fact issue is binding on us if supported by substantial evidence in the record. 39 Kan. App. 2d at 375. Here, the City did not try to refute Kotnour's testimony. Instead, the City maintains that Kotnour has not shown just cause for his failure to report his accident within 10 days after the date of the accident.

K.S.A. 44-520 requires, as a condition precedent to the maintenance of a claim for compensation, that the employee give notice of the accident to the employer:

"Except as otherwise provided in this section, proceedings for compensation under the workers compensation act shall not be maintainable unless notice of the accident, stating the time and place and particulars thereof, and the name and address of the person injured, is given to the employer within 10 days after the date of the accident, except that actual knowledge of the accident by the employer or the employer's duly authorized agent shall render the giving of such notice unnecessary. The ten-day notice provided in this section shall not bar any proceeding for compensation under the workers compensation act if the claimant shows that a failure to notify under this section was due to just cause, except that in no event shall such a proceeding for compensation be maintained unless the notice required by this section is given to the employer within 75 days after the date of the accident unless (a) actual knowledge of the accident by the employer or the employer's duly authorized agent renders the giving of such notice unnecessary as provided in this section, (b) the employer was unavailable to receive such notice as provided in this section, or (c) the employee was physically unable to give such notice."

The application of the requirement the employee give timely notice of an accident has been flexible rather than rigid.

This flexibility has been shown when an employee could not reasonably have been expected to realize that an injury was one

likely to lead to a compensable disability. See *Swayne v. Cates Service Co.*, No. 93,408, unpublished opinion filed September 16, 2005, slip op. at 14-16 (failure to report accident within the requisite 10-day statutory notice period did not preclude employee from recovering benefits when he did not know the extent of the injury to his back until he received the results of an MRI).

Moreover, in determining whether a failure to give notice of an accident defeats the claim for compensation, the remedial aims of the Workers Compensation Act must be considered. K.S.A. 2009 Supp. 44-508(d), which defines an accident as "an undesigned, sudden and unexpected event," states that "[t]he elements of an accident, as stated herein are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workers compensation act that the employer bear the expense of accidental injury to a worker caused by the employment." Thus, as a remedial statute, we must construe the Workers Compensation Act in such a way as to assure the effectuation of its stated remedial purposes: "that the employer bear the expense of accidental injury to a worker caused by the employment." K.S.A. 2009 Supp. 44-508(d).

Thinking that he had suffered only a trivial injury to his right knee, Kotnour testified to the following:

"Q. [Mr. Martin] And when you noticed this twinge in your knee, did you report it as an accident?

"A. [Claimant] I did not.

"Q. Why not?

"A. I didn't really think of it as an injury.

"Q. What do you think of as an injury?

"A. Well, I wasn't debilitated. For me it was an issue of, can I continue doing my work. Is it bad enough to keep me at home. Is it going to go away.

"Q. Have you had the same or similar incidents to other parts of your body?

"A. Yeah. I mean, I've sprained a wrist. I've twisted ankles and things like that, and usually in a couple of weeks they go away.

"Q. Do you turn those in to workers compensation?

"A. No."

Without realizing that he had suffered an injury which could lead to a compensable disability, Kotnour continued to work without any loss of time from his employment.

"Q. And I think you previously told us but so we make sure we understand, what did you understand was an injury?

"A. Something that prevented me from doing my job.

"Q. And this wasn't preventing you from doing your job?

"A. I hadn't missed any work, no.

"Q. And you still haven't missed any work?

"A. No."

As previously stated, the record shows that Kotnour was unaware that he had suffered an injury which could lead to a compensable disability until his doctor told him to report his right knee complaints to his employer. The record further indicates that Kotnour immediately reported his right knee injury to the City. In determining that Kotnour had just cause to be excused from his failure to report his right knee injury within the requisite 10-day statutory notice period, the Board's majority stated the following:

"The Board finds claimant's testimony is credible as claimant immediately notified respondent of his right knee problems when his personal physician advised him that he had probably sustained a work-related injury. Accordingly, the Board finds that claimant has established there was just cause to extend the period for notifying respondent of the September 2007 incident to 75 days."

The question of when an employee first knows that he or she has suffered an injury which results in, or is likely to cause, a compensable injury is a determination to be made by the Board. As a result, the legal resolution of the question of what constitutes just cause to extend the period for an employee to notify an employer of an accident to within 75 days after the date of the injury is a fact-specific inquiry.

As we have already stated, the City did not attempt to contradict Kotnour's testimony or theory of what happened. As a result, the Board had reason to believe Kotnour did not know that he had suffered an injury which could lead to a compensable disability until his doctor told him to report his right knee complaints to his employer. Moreover, the Board's findings are further supported by the fact that Kotnour continued to work and that the injury did not cause him to be off from work. In addition, when Kotnour sought medical care, it was unrelated to the injury to his right knee.

Upon the facts presented, there is substantial evidence, when viewed in light of the record as a whole, to support the Board's finding that Kotnour had no occasion to assume, until his visit with his family physician on December 3, 2007, that his right knee injury could cause a compensable disability, and that under K.S.A. 44-520 just cause existed to extend the period to report the accident to the City to within 75 days after the date of the injury.

Affirmed.