NOT DESIGNATED FOR PUBLICATION

No. 123,656

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSHUA L. MOSES,
*Appellant,*

v.

WEAVER VENTURES, LLC,
d/b/a Sears Home, a/k/a Sears Hometown Store #2761,
FARM BUREAU PROPERTY & CASUALTY INS. CO.,
and
KANSAS WORKERS COMPENSATION FUND,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed February 4, 2022. Affirmed.

*Mitchell W. Rice*, of Mitch Rice Injury Law, LLC, of Hutchinson, for appellant.

*Matthew S. Crowley*, of Crowley Law Office, L.L.C., of Topeka, for appellees.

Before MALONE, P.J., POWELL and ISHERWOOD, JJ.

PER CURIAM: Joshua L. Moses appeals from a final order of the Kansas Workers Compensation Appeals Board (the Board) denying his workers compensation claim. Moses' claim arose after he allegedly injured his back while removing a refrigerator from a customer's house. The administrative law judge (ALJ) credited Moses' testimony and awarded him disability compensation. The Board reversed, however, finding Moses' testimony was not credible and denying Moses' claim. On appeal, Moses claims the Board failed to provide adequate reasoning to support its reversal of the ALJ's order.

1

Moses also disputes the Board's conclusion that he failed to provide notice to his employer of his injury. After a careful review of the record, we disagree with Moses' complaints of error and affirm the Board.

FACTUAL AND PROCEDURAL BACKGROUND

Moses worked for Sears as a part-time deliveryman from June 20, 2016, to August 8, 2016, when Sears fired him for arguing with a coworker in front of customers for the third time. After his termination, Moses filed a workers compensation claim arising from a delivery he made for Sears, originally alleging the injury occurred on August 17, 2016, before amending his claim to allege the injury occurred on July 29, 2016.

According to Moses, he and his father were delivering a refrigerator to a customer in Wellington, Kansas, and removing the customer's old refrigerator. While removing the old refrigerator, Moses stated it fell on top of him while he was on the customer's porch. The refrigerator knocked Moses onto his back, but he pushed the refrigerator upright and finished the job. The refrigerator removal broke a part of the customer's slate porch. Moses claimed the customer saw the refrigerator fall on him.

Moses testified that when he returned from the delivery and pickup, his supervisor, Jay Huston, asked him what took so long. Moses told him the refrigerator fell on him, and Huston asked if Moses needed to go to the doctor. Moses told Huston he did not know at that time. Moses testified Huston asked him the next day why Moses was limping, and Moses told him it was because he was hurt. Moses continued to work that day. Moses first sought medical care for his back on August 26, 2016.

The customer, Carol Weigand, provided an affidavit and testified before the ALJ. Weigand held the door open for Moses and his father to move the old refrigerator onto

2

the porch. Weigand watched the entire time the refrigerator was on her porch, and she stated she never saw it fall on top of Moses.

Huston provided a deposition. He detailed the process for reporting workplace injuries and did not remember Moses reporting an injury that day or on any day. In fact, Huston testified he never had anyone report a workplace injury while he was manager at Sears.

The ALJ issued a preliminary order for medical treatment. Eventually, the medical care led Moses to receive a hemilaminectomy and microdiscectomy on June 9, 2018, followed by fusion surgery on February 19, 2019.

The ALJ found Moses' injury arose out of and in the course of his employment with Sears and awarded him total disability compensation. Sears sought review by the Board. The Board found Moses' testimony was not credible, reversed the ALJ's award, and denied Moses' claim for compensation.

Moses now seeks review of the Board's order.

ANALYSIS

Moses raises two issues with the Board's ruling, both of which trigger the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See K.S.A. 77-606 (establishing KJRA as exclusive means of judicial review of agency action); K.S.A. 2020 Supp. 44-556(a) (stating any action of Board under Workers Compensation Act is subject to review under KJRA directly to Court of Appeals). Because there exists "'a strong presumption of regularity in administrative proceedings,'" the party asserting error bears the burden to establish such error by the administrative agency action. *Bd. of Cherokee County*

*Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 321, 393 P.3d 601 (2017); see K.S.A. 77-621(a)(1).

We may grant relief from an administrative action only if we determine the agency violated one or more of the provisions listed in K.S.A. 77-621(c)(1)-(8*). Bd. of Cherokee County Comm'rs*, 306 Kan. at 318. Moses argues two of K.S.A. 77-621(c)'s provisions apply here:

> "(4) the agency has erroneously interpreted or applied the law;
>
> . . . .
>
> "(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

We review a challenge to the Board's interpretation or application of the law under K.S.A. 77-621(c)(4) de novo, without deference to the Board. *Mera-Hernandez v. U.S.D. 233*, 305 Kan. 1182, 1185, 390 P.3d 875 (2017).

When reviewing the Board's action under K.S.A. 77-621(c)(7), we only consider whether substantial competent evidence supports the Board's findings. "'Substantial evidence "is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."' [Citations omitted.]" *Bd. of Cherokee County Comm'rs*, 306 Kan. at 326; see *Kotnour v. City of Overland Park*, 43 Kan. App. 2d 833, 837, 233 P.3d 299 (2010) (Substantial evidence is "such evidence as a reasonable person might accept as being sufficient to support a conclusion."). K.S.A. 77-621(c)(7) requires us to review the evidence "in light of the record as a whole . . . ."

4

"For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

Even if there is evidence supporting the Board's decision, we must consider whether the supporting evidence has been so undermined by cross-examination or other evidence to render it insufficient to support the Board's decision. *Romkes v. University of Kansas*, 49 Kan. App. 2d 871, 889, 317 P.3d 124 (2014).

As Moses points out, the Board disagreed with the ALJ's credibility determinations and ruled Moses failed to establish that his injury arose out of and in the course of his employment with Sears and failed to provide timely notice of his injury. If the Board disagrees with a credibility determination made by the ALJ, the Board should provide its reasons for disagreeing, and we will "'consider the [Board's] explanation as to why the relevant evidence in the record supports its material factual findings.'" *Lake v. Jessee Trucking*, 49 Kan. App. 2d 820, 836, 316 P.3d 796 (2013). "For this court to fairly consider an agency's position should it disagree with a hearing officer's credibility determination, an explanation of the agency's differing opinion is generally needed." *Kotnour*, 43 Kan. App. 2d at 837.

I.   DID SUBSTANTIAL COMPETENT EVIDENCE SUPPORT THE BOARD'S FINDING THAT MOSES DID NOT PROVE HIS INJURY AROSE OUT OF AND IN THE COURSE OF HIS EMPLOYMENT?

Moses first argues the Board erred in concluding that moving the refrigerator on July 29, 2016, did not cause Moses' back injury. In doing so, Moses challenges the Board's reasons for disagreeing with the ALJ as insufficient. Moses argues his testimony provided adequate evidence to support his claim. In response, Sears highlights the Board's finding that Moses had trouble recalling the month or the day of the accident and also notes Wiegand testified she watched the entire time and never saw the refrigerator fall on Moses. Finally, Sears argues the Board's finding was correct because the medical evidence was inconclusive on this point as it assumed that Moses' recounting was correct despite the fact the Board had rejected Moses' version of events.

*Standard of Review*

Whether the Board's findings of fact are supported by substantial competent evidence is a legal question. *Atkins v. Webcon*, 308 Kan. 92, 95, 419 P.3d 1 (2018). "'Substantial evidence' in a workers compensation case is evidence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper, or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved." *Myers v. Lincoln Center OB/GYN, P.A.*, 39 Kan. App. 2d 372, 375, 180 P.3d 584 (2008). We review the evidence in a light most favorable to the prevailing party and do not reweigh the evidence or assess witness credibility. 39 Kan. App. 2d at 375.

*Analysis*

An accidental workplace injury is compensable if it arises out of and in the course of employment. K.S.A. 2020 Supp. 44-501b(b).

> "'Accident' means an undesigned, sudden and unexpected traumatic event, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. An accident shall be identifiable by time and place of occurrence, produce at the time symptoms of an injury and occur during a single work shift. The accident must be the prevailing factor in causing the injury. 'Accident' shall in no case be construed to include repetitive trauma in any form." K.S.A. 2020 Supp. 44-508(d).

The burden to prove an accident occurred is on the claimant. K.S.A. 2020 Supp. 44-501b(c); *Estate of Graber v. Dillon Companies*, 309 Kan. 509, 514, 439 P.3d 291 (2019).

Much of Moses' brief is an argument that his testimony was credible and the Board erred in disbelieving him. Moses insists his testimony was "remarkably honest" and consistent; he criticizes the Board's reasons for disagreeing with the ALJ and its decision finding Weigand more credible than Moses; and he finishes by pointing out the Board had a "cold record" while the ALJ heard the live testimony of both Moses and Weigand. Moses asks us to disagree with the Board's credibility findings and overturn its decision. But Moses' argument ignores the fact that we cannot reweigh the evidence or assess witness credibility. See *Myers*, 39 Kan. App. 2d at 375.

The Board provided its explanation for why it disagreed with the ALJ's credibility findings and for why it found Moses did not establish his back injury occurred when moving the refrigerator on Weigand's porch on July 29, 2016. The Board found Moses' testimony about the refrigerator falling on him was not credible because Moses could not recall the date or even the month of the accident without consulting delivery records.

Moreover, the Board credited Weigand's testimony that she watched Moses and his father move the refrigerator off her porch and never witnessed the refrigerator fall on Moses.

The Board also found Moses' testimony that he pushed the refrigerator upright while lying on the ground with an injured back, without help from his father, not believable. The Board noted Moses did not seek medical treatment for his back until he was terminated for cause, over a month after his injury, and when a pharmacy bill was sent to Sears, Moses told Huston it was a mistake and he would take care of it. The Board concluded by finding that the medical conclusions of the doctors were accurate only if Moses' story was correct. Because the Board had rejected Moses' version of events, it found the medical evidence could not support a finding that Moses' back injury arose out of and in the course of his employment with Sears.

Weigand provided an affidavit and testified. In both, Weigand flatly contradicted Moses' testimony and stated she watched the entire time the refrigerator was being moved off her porch and that she never saw the refrigerator fall on top of Moses. Substantial competent evidence supports the Board's conclusions.

II.     DID THE BOARD ERR IN FINDING MOSES DID NOT PROVIDE SUFFICIENT NOTICE?

Moses also argues the Board erred in concluding that he failed to notify his supervisors about his injury because he testified that he did. Moses also asserts Huston's testimony was not credible because it consisted of Huston stating he could not remember any details. Sears replies that the Board relied on Huston's testimony about his detailed process to handle on-the-job accidents and the fact that Huston never had an accident reported to him.

8

*Standard of Review*

Whether a claimant provided timely notice of an accident to an employer under K.S.A. 2020 Supp. 44-520 is a question of fact. The scope of review of factual questions in a workers compensation case "is limited to whether the Board's findings of fact are supported by substantial competent evidence." *Myers*, 39 Kan. App. 2d at 375.

*Analysis*

The Kansas Workers Compensation Act, K.S.A. 2020 Supp. 44-501 et seq., requires an employee to give notice of injury by accident to the employer within 20 calendar days of the date of the accident. K.S.A. 2020 Supp. 44-520(a)(1)(A). Moses alleged the accident occurred on July 29, 2016. Huston testified at his deposition that Moses never notified him about an injury. The ALJ found Moses timely notified Huston, but the Board disagreed, finding Moses' testimony was not credible and finding Moses never notified Huston of the alleged injury.

Moses once again asks us to do something the law forbids—reweigh witness credibility. Moses again asserts the Board had a cold record, while the ALJ heard Moses' live testimony. But the Board is allowed to make its own credibility determinations even when only reviewing the cold record. See K.S.A. 2020 Supp. 44-555c(a) (Board may review all questions of law and fact). Moreover, our review is limited to determining whether substantial competent evidence supports the Board's finding that Moses did not provide notice. See *Myers*, 39 Kan. App. 2d at 375. Our review of the record shows it does.

Moses testified that after the accident, Huston asked him why the delivery took so long. Moses told him the refrigerator fell on top of him. Moses testified Huston asked if Moses needed to see a doctor, but Moses said he did not know at that time. Huston asked

9

Moses why he was limping at work the next day, and Moses told him he was in pain, but he kept on working.

Huston testified at his deposition that if someone got hurt, getting them medical attention was the first priority, before completing the proper paperwork and getting a copy to the company, the employee file, and the employee. Huston testified that he would have completed the paperwork within 24 hours of the accident. Huston did not remember Moses telling him he hurt his back or asking Moses if he needed to see a doctor. Huston testified Moses never reported an on-the-job accident to him during the course of Moses' employment with Sears. In fact, Huston never had someone get hurt on the job while he was the manager at Sears.

The Board found Moses' testimony not credible, and it relied on Huston's testimony regarding his procedure for addressing workplace accidents to determine that Moses had never supplied notice to his employer. Substantial competent evidence supports the Board's conclusion.

Affirmed.